IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GREGORY D. WILLIAMS, | CASE NO. 5:20-cv-615 |
| Petitioner, | |
| | JUDGE JAMES G. CARR |
| vs. | |
| WARDEN TIM BUCHANAN, | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| Respondent. | |
| | **REPORT & RECOMMENDATION** |

This matter is before the undersigned pursuant to Local Rule 72.2. Before the Court is the Petition of Gregory D. Williams ("Williams" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1), the Answer/Return of Writ (Doc. No. 6), and Williams' Traverse (Doc. Nos. 9, 10). Williams is in custody at the Noble Correctional Institution pursuant to journal entry of sentence in the case *State v. Williams*, Stark County Court of Common Pleas, Case No. 2017CR0066. For the following reasons, the undersigned recommends that the Petition should be DISMISSED because it is time-barred.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The Ohio Court of Appeals for the Fifth Appellate District summarized the facts underlying Williams' conviction as follows:

> {¶ 2} On October 19, 2016, the twelve-year-old female victim in this case (hereinafter "child victim") was living with her mother and her siblings in a house just outside the city limits of Canton. Appellant is her father, who apparently lived periodically in the house. That evening the

child victim went to bed, wearing a shirt and a pair of pajama shorts. She was a heavy sleeper and kept the door closed on this occasion.

{¶ 3} Later that night, the child victim's older brother let appellant inside the house after he was awakened by knocking at one of the exterior doors. The older brother then went back to bed.

{¶ 4} At some point after midnight on October 20, 2016, the child victim woke up after hearing her mother, T.J., yelling at appellant. The girl realized her pajama shorts were on the floor, but she had no memory of anything unusual occurring prior to her waking up, although she later reported that her stomach hurt. Her parents continued arguing, and eventually her grandmother came and picked up her and her siblings.

{¶ 5} The mother, T.J., later recalled that on the night in question she realized appellant had entered the house, and at some point she went to check on her children. When she entered the child victim's bedroom, she observed appellant with his shorts down and the girl without clothing. She also saw appellant rubbing his penis on the child victim's buttocks, however, she did not see appellant vaginally or anally penetrate the girl. T.J. then started screaming at him. Appellant eventually left the premises.

{¶ 6} Deputies from the Stark County Sheriff's Department were then dispatched to the scene.[1]

> [FN1] During opening statements, appellant's trial counsel told the jury that appellant had indeed committed a crime on the night in question, but that it was not rape. *See* Tr. at 165. Based on this and the rather narrow focus of appellant's present brief, we will seek to limit our recitation and discussion of the deputies' investigation in the interest of judicial economy.

{¶ 7} The child victim, after initially being taken to Aultman Hospital, was transferred to Akron Children's Hospital on October 20, 2016 for treatment and evaluation, at which time she was examined by Dr. Lindsay Kahlenberg, an expert in the field of pediatric emergency medicine. Dr. Kahlenberg also spoke with the mother, but she was not able to interview the girl, who didn't want to talk and remained quiet during the examination process.

\* \* \*

{¶ 19} The record in the case *sub judice* reveals Sergeant William Konic of the Stark County Sheriff's Department testified that as part of his investigation he spoke *inter alia* with T.J., the child victim's mother, and obtained information that appellant had gone into the bedroom and "sexually assaulted" the girl. Tr. at 229. But Sgt. Konic also noted that although appellant admitted that he had been in the child victim's bed with her, he denied engaging in any sexual conduct or activity. Tr. at 230–231.

{¶ 20} The record also indicates the State called Dr. Lindsay Kahlenberg as its expert in pediatric emergency medicine. Dr. Kahlenberg, with the aid of a diagram to assist the jury, testified that she took four perianal swab samples and four vaginal area swab samples from the child victim. Specifically, Dr. Kahlenberg testified that she took the vaginal area swabs from the child victim

after she pulled apart the girl's labia. The doctor explained that "* * * the labia are marked on here so if you follow those in, those are pulled apart and it's *from inside*. So it'd be—the best on this diagram would probably be right in this area for the vaginal (indicating), it's not up—not up near the top. Typically, the less sensitive areas just to do this posterior part. *So it is inside*. For women, I would describe it as if they go to insert a tampon, it would be in that area, but not the whole way in, but it does—we do kind of swab to the edge there. * * *." Tr. at 290 (emphasis added).

{¶ 21} Dr. Kahlenberg continued by explaining that "* * * the skin is pulled kind of—the lips or the labia are pulled and it's *just inside* * * *." Tr. at 291 (emphasis added). However, she added that "* * * we don't go actually into what you would actually consider the entrance to the vagina." *Id*. She also answered hypothetically on cross-examination that if something in fluid form were to be found with this type of swabbing, she "wouldn't be able to tell you how the fluid got there." Tr. at 306.

{¶ 22} The State next called Lindsey Pruneski, a BCI analyst, who conducted an examination of the sexual assault kit obtained in the instant case. Her finding as to the vaginal samples was "a presumptive positive for seminal fluid, no sperm identified." Tr. at 316. Her finding as to the perianal samples, however, was "no semen identified." Tr. at 318. She also tested the child victim's shorts, which resulted in "no semen identified and amylase identified." Tr. at 319. As part of her protocol, Pruneski then forwarded the various samples and a portion of the victim's shorts for DNA analysis by a different unit within BCI. *See* Tr. at 318–320.

{¶ 23} The State also called Lynda Eveleth, a BCI analyst specializing in the area of DNA. Eveleth's conclusion in regard to the vaginal swabs was "mixture detected," consistent with the child victim as a contributor. Tr. at 334. She also detected a "male DNA type," but it was "not sufficient for comparison." *Id*. Her conclusion in regard to the perianal swabs was "mixture" detected, consistent with the child victim as a contributor. Tr. at 335. She also detected a "male DNA type," but it was "not sufficient for inclusion." *Id*.

{¶ 24} Eveleth then testified concerning a second report, issued December 1, 2016, which included a comparison to appellant's DNA. Regarding the vaginal swabs, the child victim was included as a contributor. Additional data was obtained that included a male DNA type, not sufficient for comparison. Appellant's sample was excluded as a "major contributor." *See* Tr. at 338. Regarding the perianal swabs, the child victim was included as a contributor, and this was consistent with the major DNA profile. Additional data was obtained that included the male DNA type, but it was not sufficient for inclusion. Tr. at 339. Appellant was excluded as the major contributor and he was inconclusive as a minor contributor. Tr. at 340. There was not enough DNA present from the minor contributor to make a conclusion regarding him being excluded or included. *Id*. Finally, regarding the analysis of the crotch area of the child victim's shorts, the DNA testing indicated that there was a mixture detected, consistent with the child victim as a contributor and consistent with appellant as a contributor. Tr. at 341. Also, the DNA testing of the swab taken from the shorts revealed a mixture consistent with the child victim as a contributor and appellant as a contributor. Tr. at 342.

{¶ 25} The final witness from BCI was Hallie Dreyer, who specializes in male-specific DNA testing known as Y–STR testing. Tr. at 363. Dreyer testified that this type of testing focuses on

areas that are on the Y chromosome. Tr. at 366. Also, this testing does not uniquely identify an individual, but it "can potentially link to a paternal lineage." *Id*. In other words, the results of this testing do not enable one "to say it's one male and only one male." *Id*. Dreyer noted that it is appropriate to do Y–STR testing in situations where there is going to be a large amount of female DNA in the samples that can potentially mask any foreign DNA. Tr. at 367.

{¶ 26} Regarding the vaginal samples, Dreyer testified that using Y–STR testing, she obtained a single male profile that was consistent with appellant. Tr. at 369–370. Neither appellant nor any of his paternal male relatives could be eliminated as the source of this profile. Tr. at 370. From the vaginal samples, Dreyer found "a full Y–STR profile in the nonsperm fraction, and a partial Y–STR profile in the sperm fraction, both consistent with Mr. Williams." *Id*. Her findings were at a rarity of 1 in 621, which she noted was the highest statistic obtainable using this type of testing. Tr. at 372.

{¶ 27} Regarding the perianal sample, Dreyer testified that she also obtained a single male profile that was consistent with appellant. Neither appellant nor any of his paternal male relatives could be eliminated as the source of this profile. Tr. at 371. Her findings were again at a rarity of 1 in 621. *Id*. However, no sperm fraction was found in the perianal samples. *Id*.

*State v. Williams*, 2018-Ohio-1992, 2018 WL 2324329, at *1, 3-4 (Oh. Ct. App. May 21, 2018).

## II. Procedural Background

### A. Trial Court Proceedings

On January 17, 2017, the Stark County Grand Jury indicted Williams on one count of rape of a victim less than 13 years of age, R.C. 2907.02(A)(1)(b). Doc. No. 6-1, p. 4 (Exhibit 1). Williams, through counsel, pleaded not guilty. Doc. No. 6-1, p. 6 (Exhibit 2).

The case proceeded to trial and the jury found Williams guilty as charged and of a lesser included offense of gross sexual imposition, R.C. 2907.05(A)(4). Doc. No. 6-1, pp. 7-11. (Exhibits 3, 4). On April 20, 2017, the trial court found the two charges were allied offenses of similar import, merged them for sentencing purposes, and sentenced Williams to life in prison for rape. Doc. No. 6-1, pp. 15-18 (Exhibit 7).

### B. Direct Appeal

On May 15, 2017, Williams, through new counsel, appealed to the Ohio Fifth District Court of Appeals, Stark County. Doc. No. 6-1, p. 19 (Exhibit 8). In his brief, he raised the following assignment

4

of error:

> The jury's finding of guilt was not supported by sufficient evidence.

Doc. No. 6-1, pp. 29-46 (Exhibit 9). On May 21, 2018, the Ohio Court of Appeals affirmed the trial court's judgment. Doc. No. 6-1, pp. 85-94. (Exhibit 11).

On July 2, 2018, Williams, *pro se*, appealed to the Ohio Supreme Court. Doc. No. 6-1, p. 96 (Exhibit 12). In his memorandum in support of jurisdiction, he raised the following proposition of law:

> By accepting the jury verdict, the trial court erred and violated the Due Process Clauses to the United States Constitution as well as the Ohio Constitution, whereas the prosecution, for the State of Ohio, failed to offer sufficient evidence as to all necessary elements for the offense of Rape.

Doc. No. 6-1, p. 99 (Exhibit 13). On August 29, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. No. 6-1, p. 119 (Exhibit 15).

**C. Delayed Application for Reopening Appeal Pursuant to Ohio App. R. 26(B)**

On June 20, 2019, Williams, *pro se*, filed a delayed application for reopening his appeal pursuant to Ohio App. R. 26(B). Doc. No. 6-1, p. 120 (Exhibit 16). As cause for his delay, he argued that his right to file a Rule 26(B) application had been concealed from him by his appellate counsel. Doc. No. 6-1, p. 121. As grounds for reopening his appeal, Williams argued that appellate counsel had provided ineffective assistance for not raising the following assignments of error on appeal:

> 1. Williams was denied a fair trial pursuant [to] improper jury instructions and a forbidden amendment to indictment.
>
> 2. The trial court erred in imposing post-release control where R.C. §2967.28 has no application to terms of imprisonment.

Doc. No. 6-1, pp. 122-123. On October 29, 2019, the Ohio Court of Appeals denied Williams' application for reopening his appeal, finding that he had failed to demonstrate good cause for his untimely filing. Doc. No. 6-1, pp. 142-144 (Exhibit 18).

Williams did not appeal to the Ohio Supreme Court.

**D. Federal Habeas Petition**

On March 13, 2020, Williams, *pro se*, filed a habeas petition pursuant to 28 U.S.C. §2254.[1] Doc. No. 1, p. 3. In his petition, he raises the following grounds for relief:

> **GROUND ONE:** By accepting the jury verdict, the trial court erred and violated the Due Process Clauses to the United States Constitution as well as the Ohio Constitution, whereas the prosecution, for the State of Ohio, failed to offer sufficient evidence as to all necessary elements for the offense of Rape.
>
> **Supporting Facts:** It is well settled that a conviction based upon a record wholly devoid of any relevant evidence of an element of the offense charged is unconstitutional, found the record devoid of evidence of penetration and thus, the State Courts decision was both "contrary to" and "involved an unreasonable application of" clearly established federal law, as determined by the United States Supreme Court, when it determined that "[e]ven if appellant was not shown to, have place his penis deep inside the child victim's vagina, this does not eliminate a finding of penetration under the Ohio statutory definition." (quoting State v. Williams, 2018-Ohio-1992, 130).
>
> **GROUND TWO:** Actual innocence.
>
> **Supporting Facts:** Not one Witness the State paraded before the jury testified Appellant abused or touched his daughter inappropriately, let alone raped her. Further, there is no evidence his daughter or her mother ever accused Petitioner of such inappropriate behavior. Every interview and medical evaluation of the daughter supported this fact.
>
> By planning, shaping, and conducting an investigation that ignored the evidence negating probable cause, the Police and Prosecutor, under color of law, violated Petitioner's Fourth Amendment right to be free of arrest without probable cause, and his Fifth and Fourteenth Amendment rights to due process in the investigation. Thus, the Prosecutor committed a fraud upon Petitioner, the Defense, and the Court in patent violation of the ethical responsibilities of attorneys practicing before the court and in patent violation of Petitioner's rights under the Fifth and Sixth Amendments to the United States Constitution.

Doc. No. 1, pp. 2, 4.

### III. Law and Analysis

Respondent argues that Williams' petition is barred by the statute of limitations and that he is not entitled to tolling principles to excuse the time bar. Doc. No. 6, pp. 9-17. For the reasons explained

---

[1] Williams states that he placed his petition in the prison mail system on March 13, 2020. *See Houston v. Lack*, 487 U.S. 266, 274 (1988) (a *pro se* prisoner's filing is deemed filed on the day it is delivered to the prison mail system).

below, the undersigned agrees that Williams' petition is time-barred and that he is not entitled to tolling principles.

**A.  The one-year limitations period expired before Williams filed his petition**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a state court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

>  (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>  (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>  (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>  (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, Williams' case became final when his time for seeking direct review expired on November 27, 2018. *See* § 2244(d)(1)(A).[2] To recap: Williams was sentenced on April 20, 2017. Thereafter, he filed timely appeals until the Ohio Supreme Court declined jurisdiction of his appeal on August 29, 2018. He had 90 days—until November 27, 2018—to petition for a writ of certiorari in the United States Supreme Court, but he did not do so. *See* U.S. Sup. Ct. R. 13. Thus, Williams' conviction became final on November 27, 2018, and the limitations period began running the next day. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (a conviction becomes final when the time for filing a certiorari petition expires); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (limitations period begins running the day after the event or default). The limitations period expired one year later, on November 28, 2019. Williams' petition, filed on March 13, 2020, is more than three months late.

---

[2]  No other provision of § 2244(d)(1) appears to apply to Williams' case.

Accordingly, the undersigned finds that Williams' petition was filed after the limitations period expired.

**B. Williams is not entitled to tolling principles to excuse the time bar**

**1. Statutory tolling**

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)). "An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, *e.g.*, requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)). For instance, a post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Id*. at 771-772; *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a petition is not "properly filed" when the state courts reject it as untimely pursuant to state law).

Here, the undersigned finds that Williams is not entitled to statutory tolling. Although he filed a delayed application to reopen pursuant to App. R. 26(B) on June 20, 2019, the Ohio Court of Appeals rejected it as untimely. Doc. No. 6-1, pp. 142-144. Thus, his delayed application to reopen was not "properly filed" and does not toll the limitations period. *See Israfil*, 276 F.3d at 771; *Pace*, 544 U.S. at 417; *Miller v. LaRose*, 2014 WL 4794529, at *2, 9 (N.D. Ohio Sept. 24, 2014) (Rule 26(B) application for reopening denied by the Ohio Court of Appeals as untimely is not "properly filed" and does not toll the limitations period).

**2. Equitable tolling**

A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and

some extraordinary circumstance prevented him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). The petitioner bears the burden of establishing entitlement. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Williams does not show that he has been pursuing his rights diligently and that some extraordinary circumstance prevented him from timely filing his habeas petition. Indeed, he did not respond to Respondent's assertion that his petition is time-barred in his Traverse. In his motion for delayed appealed filed with the Ohio Court of Appeals, he had stated that his Rule 26(B) application was late because his appellate counsel had "conceal[ed]" that he had Rule 26(B) application rights. Doc. No. 6-1, p. 121. But the letter he had attached from appellate counsel in which counsel advised him that she no longer represented him, invited him to call her if he had any questions, and stated that it was imperative that he act quickly if he wanted to appeal to the Ohio Supreme Court (Doc. No. 6-1, p. 125) did not conceal his state collateral appellate rights. Nor did information in that letter conceal the federal habeas statute of limitations. *See Miller*, 2014 WL 4794529, at *11 (finding that the petitioner was not entitled to equitable tolling; "Miller's aforementioned late filings [in state court] were all submitted while he was representing himself *pro se,* and his untimely habeas petition cannot be blamed on his appellate counsel who timely filed his direct appeal."); *Vroman v. Brigano*, 346 F.3d 602, 605 (6th Cir. 2003) (petitioner's decision to pursue only state court remedies shows a lack of diligence in timely filing a federal habeas petition). Moreover, "ignorance of the law alone is not sufficient to warrant equitable tolling [in a federal habeas case]." *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)); *see also Taylor v. Palmer*, 623 Fed. App'x 783, 789 (6th Cir. 2015); *Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear

9

policy calls for promptness[.]").

In sum, the undersigned finds that Williams is not entitled to equitable tolling.

### 3. Williams does not show actual innocence

Finally, a claim of actual innocence may overcome the expiration of AEDPA's one-year statute of limitations if the petition "demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495-496 (1986)).  "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court has underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 394-395 (2013) (quoting *Schulp*, 513 U.S. at 329).  The timing of an actual innocence claim "seriously undermine[s] the credibility" of such a claim. *Id*. at 400.

In his petition, Williams argues actual innocence.  Doc. No. 1, p. 2, 4.  He submits that no witness testified that he "abused or touched" or raped the victim; neither the victim or her mother accused Williams of "inappropriate behavior," and that "every interview and medical evaluation" of the victim supported "this fact." Doc. No. 1, p. 2.  As an initial matter, Williams himself conceded at trial that he had engaged in gross sexual imposition with the victim that night, *i.e.*, he had inappropriate contact. *E.g.*, Doc. No. 6-2, pp. 31-33; Doc. No. 6-3, pp. 14, 161, 164.  Thus, his actual innocence argument is that the state did not prove that he had raped the victim according to the statutory definition.  But he has not

identified new reliable evidence that was not presented at trial. Rather, he disagrees with the jury's finding based on the state's evidence regarding how his fluid came to be found in a particular area on the victim that the expert witness had swabbed and tested. Doc. No. 9, pp. 11-12. The undersigned finds that Williams has not shown that his is one of "a severely confined category [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner'" to overcome the one-year statute of limitations. *McQuiggin*, 569 U.S. at 395.

In sum, the undersigned finds that Williams' petition is time-barred and he has not demonstrated that that time-bar should be excused.[3]

### IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.

Date: May 31, 2022                     *s/ Jonathan Greenberg*
                                       Jonathan D. Greenberg
                                       United States Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).**

---

[3] Respondent also argues that Williams' grounds for relief are not cognizable and/or fail on the merits. Because Williams' petition is time-barred, the undersigned has not considered those additional arguments.